Filed 12/15/14  Saed v. Wells Fargo Bank CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DIANA SAED, | B247224 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC116438) |
| v. | |
| WELLS FARGO BANK, N.A., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Affirmed.

Michael H. Lapidus for Plaintiff and Appellant Diana Saed.

Kutak Rock, Jeffrey S. Gerardo, Steven M. Dailey and Antoinette P. Hewitt, for Defendants and Respondents Wells Fargo Bank, N.A. and Ara Kanbarian.

Klinedinst, G. Dale Britton and Brian P. Murphy, for Defendants and Respondents Selene Financial, L.P. and SRMOF 2009-I Trust.

_____

Diana Saed appeals from the judgment dismissing her complaint alleging Wells Fargo, N.A. and its employee Ara Kanbarian had fraudulently induced her to obtain loans she could not afford, resulting in the nonjudicial foreclosure sale of her home by Selene Finance, L.P. and its assignee, SRMOF 2009-1 Trust (jointly Selene Finance). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

According to Saed's complaint, in 1994 she purchased a residential property on Lindenhurst Avenue in Los Angeles. Saed financed the purchase with a secured loan of $157,000 and spent $550,000 to rebuild the house. Shortly after the construction project was completed, she refinanced the property based on the recommendation of a Wells Fargo loan officer "because she had so much equity in it and interest rates were lower." Wells Fargo's refinancing loan was secured by a deed of trust on the property.

In 2003 Saed obtained a loan from Countrywide Financial Corporation to renovate the garage at the property. Countrywide "took over the Wells Fargo loan" and became the beneficiary under the trust deed. That same year a Wells Fargo loan officer approached Saed and persuaded her to obtain a $100,000 line of credit for her travel agency. Saed never used the line of credit.

In 2005 Kanbarian "began demanding that [Saed] accept a $500,000 personal line of credit from Wells Fargo" to purchase a second piece of property that could be leased to increase her income. Although Saed was "nervous" about accepting the loan, she agreed. Kanbarian pressured Saed "incessantly" to use the line of credit to buy more property, telephoning her "almost daily for at least a year." In 2006 Saed "acquiesced to Kanbarian's constant demands" and purchased a property on Rodeo Drive in Beverly Hills for $1.8 million. Saed used the Wells Fargo line of credit and a $1.3 million loan from Countrywide to finance the purchase. In 2007 Kanbarian suggested she refinance both properties to lower her debt service. With his help she obtained a variable rate mortgage of $1.25 million from Washington Mutual on the Lindenhurst property and a $1.4 million loan from Wells Fargo secured by the Rodeo Drive property.

2

In 2008, unable to pay the debt service of more than $7,000 per month, Saed sold the Lindenhurst property for less than she owed on the outstanding loan. Beginning in 2009 she also attempted to negotiate a modification of the Wells Fargo loan on the Rodeo Drive property. The loan modification was denied, and Wells Fargo recorded a notice of default on June 16, 2009. A notice of sale was recorded on September 18, 2009. In 2011 Wells Fargo, the beneficiary of the deed of trust, assigned its rights to Selene Finance. A second notice of default was recorded on August 31, 2011, reflecting that Saed was in default in the amount of $225,142.75. A notice of trustee's sale was recorded on December 20, 2011.

Saed alleges she realized in June 2009 Kanbarian and others had induced her to obtain a series of loans knowing she could not repay them, resulting in the loss of both properties and her financial ruin. On March 26, 2012 she filed a complaint against Kanbarian, Wells Fargo and Selene Finance alleging causes of action for fraud, negligent misrepresentation, intentional infliction of emotional distress, intentional interference with prospective economic advantage and unfair competition (Bus. & Prof. Code, § 17200 et seq.). The complaint prayed for an injunction barring the sale of the Rodeo Drive property. Saed filed a first amended complaint alleging the same causes of action on April 2, 2012.

On April 10, 2012 Saed moved ex parte for a temporary restraining order and a preliminary injunction. The court heard the matter on May 3, 2012; it denied injunctive relief on May 4, 2012. The court ruled Saed had failed to show she reasonably relied on the alleged misrepresentations of Kanbarian and her allegations he had fraudulently pressured her into accepting the loans were too general to warrant relief. Moreover, the court found the fraud claim had accrued in 2008 and was time-barred under Code of Civil Procedure section 338, subdivision (d). Her other claims were similarly deficient.

Shortly thereafter, Wells Fargo and Kanbarian demurred to the first amended complaint; Selene Finance also demurred. On June 15, 2012, while the demurrers were pending, the Rodeo Drive property was sold at a trustee's sale to the Madison Group. On July 9, 2012, contending the sale had been "based on fraud and predatory lending

3

allegations," Saed sought leave to file a second amended complaint adding the Madison Group as a defendant and adding claims for quiet title and declaratory relief. The court denied the application.

The demurrers were heard on January 9, 2013 and sustained without leave to amend. In its decision the court concluded the alleged misrepresentations by Kanbarian were not actionable because they were expressions of opinion about future income and did not concern past or existing facts. Further, Saed had failed to allege facts that would demonstrate her reliance on Kanbarian's statements was reasonable or give rise to a fiduciary duty on the part of Wells Fargo. In addition, Saed's fraud cause of action accrued when she was forced to sell the Lindenhurst property in 2008, and she had not filed her complaint until March 2012, well beyond the three-year statute of limitations. Saed's counsel acknowledged at the hearing he was not opposing the demurrers to the remaining causes of action. A judgment of dismissal was entered on January 10, 2013.

## CONTENTIONS

Saed contends the trial court erred in ruling her cause of action for fraud had accrued in 2008 and that Kanbarian, by acting as a mortgage broker, undertook a fiduciary obligation to her that made his false statements actionable and delayed the accrual of her cause of action. Saed also contends the court erred in sustaining the demurrers without leave to amend and she should be permitted to pursue her negligent misrepresentation cause of action, as well as one for wrongful foreclosure.

## DISCUSSION

1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of*

4

*Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  We liberally construe the pleading with a view to substantial justice between the parties.  (Code Civ. Proc., § 452; *Schifando,* at p. 1081.)

"'If we see a reasonable possibility that the plaintiff could cure the defect by amendment, then we conclude that the trial court abused its discretion in denying leave to amend.  If we determine otherwise, then we conclude it did not.'  [Citation.]  '"The burden of proving such reasonable possibility is squarely on the plaintiff."'  [Citation.]  To satisfy this burden, '"a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading'"' by clearly stating not only the legal basis for the amendment, but also the factual allegations to sufficiently state a cause of action."  (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 618 (*Graham*).)

2.  *Saed Has Failed To Allege an Actionable Fraudulent Statement*

"To establish a claim for fraudulent misrepresentation, the plaintiff must prove: '(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff.'" (*Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429, 434, italics omitted; accord, *Graham, supra,* 226 Cal.App.4th at pp. 605-606.)  In general, "[p]redictions about a buyer's real estate investment or the fair market value for property in the future are not actionable misrepresentations.  '"It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions."'" (*Graham,* at p. 607, quoting *Neu-Visions Sports Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 309-310; accord, *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469-1470.)

5

Saed identifies several purported misrepresentations Kanbarian made to her that allegedly caused her to incur financial obligations beyond her means. The first set of misrepresentations concerned the $500,000 line of credit: According to Saed, Kanbarian repeatedly told her in 2005 and 2006 "[t]hat taking a $500,000 line of credit from Wells Fargo would be to her financial advantage"; "using [it] to purchase a second piece o[f] real estate would increase her income"; and "it would be to her financial advantage to use [it] as a down payment on real estate [for use] as a rental property." As a result Saed alleges she purchased the Rodeo Drive property and incurred monthly loan payment obligations in excess of $7,000.

Kanbarian's statements, however, plainly fall within the scope of opinions about future value that are not actionable, and Saed mistakenly assumes Wells Fargo had a duty to warn her that accepting a $500,000 line of credit and using it to buy more real property might not be a good investment for her. The trial court correctly ruled California law does not impose such a paternalistic duty on a lender. (See, e.g., *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 403 ["As a matter of economic and social policy, [investors] should be encouraged to rely on their own prudence, diligence, and contracting power, as well as other informational tools. This kind of self-reliance promotes sound investment and credit practices and discourages the careless use of monetary resources."]; *Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096 ["as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money"]; *Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 740, quoting *Sierra-Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal.App.3d 318, 334 ["'[a] commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower'"]; *Oaks Management Corp. v. Superior Court* (2006) 145 Cal.App.4th 453, 466 ["absent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender"]; *Wagner v. Benson* (1980) 101 Cal.App.3d 27, 35 [where plaintiffs, self-described "inexperienced investors," alleged

6

they suffered substantial harm from bank's negligence in loaning money to them for "a risky venture," court held bank owed no duty of care in approving their loan].)

Indeed, Saed's argument parallels that of the borrowers in *Perlas v. GMAC Mortgage, LLC, supra,* 187 Cal.App.4th 429, who alleged they had relied on the lender's determination they qualified for a loan as an implicit representation that they could afford the loan based on the income information provided. (*Id.* at p. 434.) In rejecting the plaintiffs' claim for fraudulent misrepresentation, the court stated: "[Plaintiffs] appear to conflate loan qualification and loan affordability. In effect, [plaintiffs] argue that they were entitled to rely upon [the lender's] determination that they qualified for the loans in order to decide if they could afford the loans. [Plaintiffs] cite no authority for this proposition, and it ignores the nature of the lender-borrower relationship. '[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender. [Citations.]' [Citation.] A commercial lender pursues its own economic interests in lending money. [Citation.] . . . [Citation.] A lender is under no duty 'to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.'" (*Id.* at p. 436, italics deleted.)

Acknowledging this general principle, Saed contends the "special circumstances" of this case gave rise to a fiduciary duty on the part of Kanbarian and Wells Fargo that required them to act in her best interests. According to the first amended complaint, after Saed purchased the Rodeo Drive property in 2007 with a $1.3 million loan from Countrywide, Kanbarian told her he could get her a lower interest rate than she was paying Countrywide—which also held the loan on the Lindenhurst property—and that her monthly payments would be reduced if she refinanced the properties through Wells Fargo. When Wells Fargo declined to cover both loans, Kanbarian helped her get a $1.25 million loan from Washington Mutual on the Lindenhurst property and a $1.4 million loan from Wells Fargo on the Rodeo Drive property. Saed argues that, by helping her obtain a loan from Washington Mutual, Kanbarian acted as a loan broker rather than a lender. (See *Smith v. Home Loan Funding, Inc.* (2011) 192 Cal.App.4th

7

1331, 1332 ["A mortgage broker has a fiduciary duty to a borrower. A mortgage lender does not."].)[1]

Thus, Saed theorizes, if Kanbarian had been acting with her best interests in mind, he would not have urged her to use the $500,000 line of credit to purchase a second property. Her reasoning, however, is defective because the requisite nexus between the alleged harm and Kanbarian's conduct is missing. (See *Graham, supra,* 226 Cal.App.4th at p. 608.) Saed's generic allegations that Kanbarian pressured her into accepting the $500,000 line of credit and using it to purchase additional real property do not support the existence of a fiduciary duty at the crucial moment when she decided to purchase the Rodeo Drive property. To be sure, Kanbarian's assistance in securing a loan from Washington Mutual to replace the Countrywide loan on the Rodeo Drive property may have exposed him and Wells Fargo to broker liability with respect to that specific transaction, but there is no connection between the Washington Mutual loan and Saed's inability to support the debt obligations she incurred by purchasing the Rodeo Drive property in the first place. She elected to use the $500,000 line of credit as a down payment for the property and financed its purchase with a $1.3 million loan from Countrywide. Her overexposure to Countrywide, which held the debt on both the Lindenhurst and Rodeo Drive properties, does not justify imposing fiduciary liability on

---

[1] "A mortgage loan broker is customarily retained by a borrower to act as the *borrower's agent* in negotiating an acceptable loan. All persons engaged in this business in California are required to obtain real estate licenses. [Citation.] Thus, general principles of agency [citations] combine with statutory duties . . . to impose upon mortgage loan brokers an obligation to make a full and accurate disclosure of the terms of a loan to borrowers and to act always in the utmost good faith toward their principals. 'The law imposes on a real estate agent "the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary." [Citations.] This relationship not only imposes upon him the duty of acting in the highest good faith toward his principal but precludes the agent from obtaining any advantage over the principal in any transaction had by virtue of his agency. [Citation.]' [Citation.] A real estate licensee is 'charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision.'" (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 782.)

8

Wells Fargo for Saed's own misguided decisions. Saed was not the only investor, nor Kanbarian the only loan officer, to bet the wrong way on the housing market in 2007.[2]

With respect to Selene Finance, none of the allegations of fraud concerns it, nor is there a proper allegation of fact supporting Saed's boilerplate agency allegation.

### 3. *Saed's Remaining Causes of Action Are Similarly Defective; the Trial Court Did Not Abuse Its Discretion in Denying Leave To Amend*

Saed's additional claim of negligent misrepresentation suffers from the same faulty reasoning. As with a fraud claim, "[a]n essential element of a cause of action for negligent misrepresentation is that the defendant must have made a misrepresentation as to a past or existing material fact." (*Gentry v. eBay, Inc*. (2002) 99 Cal.App.4th 816, 835.) The generic allegations of pressure and Kanbarian's prediction that Saed's monthly payments would be reduced in the future are simply not actionable misrepresentations.

It ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility the defect can be cured by amendment. (*Aubry v. Tri-City Hospital Dist., supra,* 2 Cal.4th at pp. 970-971.) As discussed, if the plaintiff has shown in this court "in what manner [s]he can amend h[er] complaint and how that amendment will change the legal effect of h[er] pleading" (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349), we will reverse the trial court's dismissal of the action and remand the matter with directions to grant leave to amend. Here, however, Saed has failed to identify—either in the trial court or on appeal—how she might amend her complaint to correct the fatal defects in her misrepresentation claims.

Instead, Saed asserts, if given the opportunity, she would amend to assert a cause of action for wrongful foreclosure on the ground that Kanbarian's conduct resulted in unconscionable loans.[3] As a matter of law, however, the allegations relating to

---

[2]    Because we conclude that Saed has failed to allege actionable fraud by Kanbarian, we do not reach the issue of whether her claim is barred by the three-year statute of limitations.

[3]    The elements of a wrongful foreclosure claim are: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but

9

Kanbarian's conduct are insufficient to establish unconscionability. (See *Graham, supra,* 226 Cal.App.4th at pp. 616-617; *Jones v. Wells Fargo Bank* (2003) 112 Cal.App.4th 1527, 1539.) Unconscionability can result from """"an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."""" (*Graham,* at p. 616; see *Jones,* at pp. 1539-1540 ["The doctrine includes both procedural and substantive elements. [Citation.] The procedural element requires oppression or surprise. [Citation.] Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form. [Citation.] The substantive element concerns whether a contractual provision reallocates risks in an objectively unreasonable or unexpected manner. [Citation.] To be substantively unconscionable, a contractual provision must shock the conscience."].) The allegations related to Kanbarian assert he pressured Saed by calling her frequently, but they do not show she suffered from a lack of meaningful choice, bargaining power or surprise concerning the loan terms that might support a finding of procedural unconscionability. In the absence of proposed facts that support a wrongful foreclosure cause of action, there is no basis to reverse the trial court's denial of leave to amend.

---

not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104; accord, *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062.)

## DISPOSITION

The judgment of dismissal is affirmed.  Wells Fargo, Kanbarian and Selene Finance are to recover their costs on appeal.


                                                    PERLUSS, P.J.


We concur:



            ZELON, J.




            SEGAL, J.*

---

*        Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.